J-S83042-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN THE INTEREST OF: A.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.M., NATURAL MOTHER | No. 1138 WDA 2018 |

Appeal from the Order Entered July 13, 2018
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000091-2018

BEFORE: PANELLA, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED FEBRUARY 12, 2019

K.M. ("Mother") appeals from the Order granting the Petition filed by the Allegheny County Office of Children, Youth and Families ("CYF"), involuntarily terminating her parental rights to her minor daughter, A.J. ("Child"), born in May 2008.[1] We affirm.

The record reveals that CYF has a lengthy history of involvement with this family, dating back to 2011. N.T., 6/22/18, at 61. Most recently, CYF opened a case in May 2014, due to deplorable conditions in the family's home. Id. at 61-62. The home was dirty and infested with flies, ants, and roaches. Id. at 62. CYF also had concerns regarding neglect of Child. Id. Importantly, Child exhibits several special needs. Child's diagnoses include autism

---

[1] The Order also involuntarily terminated the parental rights of Child's father, D.J. ("Father"). Father did not appeal the termination of his parental rights, nor did he file a brief in connection with Mother's appeal.

spectrum disorder, 12P duplication syndrome,[2] and seizure disorder. CYF Exhibit 3 (May and June 2018 psychological evaluation report) at 3. Child also displays cognitive limitations and communication difficulties, including, inter alia, mumbling, discomfort when interacting with individuals who are unfamiliar to her, and difficulty recognizing and understanding emotions. See id. at 3-4 (detailing Child's cognitive and communication difficulties).

The family's problems persisted after CYF opened its case. The family moved into a new home at a time unspecified in the record, but soon it became infested with bed bugs and roaches. See CYF Exhibit 2 (Dependency Orders). The family moved again in October 2014. Id. However, by December 2015, bed bugs and roaches again infested their home. Id. The family also failed to maintain the utilities in their home, with water service being shut off once and gas service being shut off twice. Id. The Orphans' Court adjudicated Child dependent on December 2, 2015, but allowed her to remain in Mother's care. Id.

This arrangement continued for less than four months. N.T., 6/22/18, at 64. On March 22, 2016, Child's guardian ad litem ("GAL"), KidsVoice, filed a Motion requesting Child's removal due to conditions in the family's home and the parents' treatment of Child. Id. The Orphans' Court directed CYF to

---

[2] 12P duplication syndrome "is a rare chromosomal disorder that results in physical abnormalities, combined developmental delays, [] learning disabilities, and abnormal muscle tone." CYF Exhibit 3 (May and June 2018 psychological evaluation report) at 3.

investigate and request emergency custody if necessary. See CYF Exhibit 2 (Dependency Orders). The court entered an Order for emergency protective custody the following day and entered a shelter care Order on April 4, 2016. Id. In a permanency review Order entered April 5, 2016, the court explained that it had removed Child due to a bug infestation and cleanliness problems in the home, a lack of appropriate supervision and parenting, and inappropriate discipline, including "taping [Child] to a chair with duct tape, spanking, [and] throwing [Child] across the room," among other things. Id.

On April 18, 2018, CYF filed a Petition to involuntarily terminate Mother's parental rights to Child.[3] The Orphans' Court conducted a termination hearing on June 22, 2018, and July 12, 2018. On July 13, 2018, the parties reconvened and the court announced its decision to terminate Mother's rights. The Orphans' Court entered an Order memorializing its decision later that day. Mother timely filed a Notice of Appeal on August 10, 2018, along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother now raises the following claims for our review:

> 1. Did the [Orphans' C]ourt abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.[A.] §[]2511(a)(2), (5), and (8)?

---

[3] On May 15, 2018, Child's GAL filed a Motion for appointment of separate counsel. The Orphans' Court granted the GAL's Motion on May 18, 2018, and appointed the Office of Conflict Counsel to represent Child's legal interests. James J. Robertson, Esquire ("Attorney Robertson"), thereafter entered his appearance on behalf of Child.

2. Did the [Orphans' C]ourt abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the [C]hild pursuant to 23 Pa.C.S.[A.] §[]2511(b)?

Mother's Brief at 6.

In reviewing an appeal from an Order terminating parental rights, we adhere to the following standard:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. See 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis

concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted); see also In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009) (stating that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." (citation and quotation marks omitted)).

In the instant matter, the Orphans' Court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Here, we analyze the court's decision pursuant to Section 2511(a)(2) and (b), which provide as follows:

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We begin by addressing whether the Orphans' Court abused its discretion pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Mother argues that she should not be held to a standard of "optimal parenting." Mother's Brief at 20. Mother contends that she has sufficiently

addressed the issues that brought Child into foster care by "obtaining and maintaining safe and appropriate housing and by improving her parenting skills to meet the special needs of [Child]." Id. Mother acknowledges that "foster mother may do a better job at meeting the needs of [Child,]" but asserts that the record does not establish that Mother is unable to parent Child, or that she poses any risk to Child. Id. at 21.

In its Findings of Fact, the Orphans' Court concluded that CYF established grounds to terminate Mother's parental rights pursuant to Section 2511(a)(2) by clear and convincing evidence. Findings of Fact, 7/13/18, at ¶ 50. The court reasoned that although Mother worked hard to remedy the conditions that led to Child's removal, she remains unable to meet Child's needs. Id. The court further reasoned that Mother participated in services for four years with little progress, and that additional services would not remedy these circumstances within a reasonable time, if ever. Id.

The record supports the findings and conclusions of the Orphans' Court with regard to Section 2511(a)(2). The record indicates that Mother has been compliant with her reunification goals in terms of participating in services and cooperating with CYF. However, Mother has failed to make progress regarding her parenting skills. CYF caseworker Patrick Riley ("Riley") testified that Mother tends to become frustrated with Child easily and resorted to using

corporal punishment during a visit in March or April of 2018.[4] N.T., 6/22/18, at 71, 76-77. Riley further explained that Mother's visits with Child lack interaction and structure. Id. at 75-76. Reports from the visitation supervisor indicate that Mother allows Child to play on an iPad "to keep her quiet the whole visit." Id. at 100.

The Orphans' Court heard similar testimony from Susan Meyer ("Meyer"), a mental health clinician for Holy Family Institute. Meyer testified that she worked previously as an in-home counselor for Holy Family Institute, and that she provided services for Mother and Child in that capacity on several occasions, beginning in August 2014. Id. at 10. Meyer explained that Mother's parenting abilities improved and then declined "like a roller coaster." Id. at 23. She also reported that Mother struggles to address Child's special needs. Id. at 26-27. While Mother attended Child's medical appointments, "sometimes there were issues with understanding everything that was going on ... within, you know, her understanding of what was happening, I think she tried the best she could to hear what was being said." Id. Holy Family

---

[4] Following this incident, Mother no longer received unsupervised visits with Child. See N.T., 6/22/18, at 76. CYF suspended Mother's visits completely between the first and second days of the termination hearing due to an alleged incident of domestic violence during which Father assaulted Mother. See N.T., 7/12/18 and 7/13/18, at 19, 29-30. At the conclusion of the hearing, the Orphans' Court criticized CYF's decision to suspend Mother's visits, observing, "I can even sort of understand that they might have wanted to temporarily stop [F]ather's visitation. But I don't know why they stopped [M]other's visitation. She was a victim. I don't feel that was an appropriate response." Id. at 121.

Institute closed out services unsuccessfully for the final time in December 2017. Id. at 23-24.

Finally, the Orphans' Court admitted into evidence several psychological evaluation reports prepared by Neil Rosenblum, Ph.D. ("Dr. Rosenblum"). See CYF Exhibit 3. Dr. Rosenblum prepared the reports after conducting evaluations of Mother and Child interacting together, and of Mother individually. See id. In his reports, Dr. Rosenblum observed that Mother displayed poor parenting abilities, in that she "was extremely passive and largely ineffective in her interactions" with Child. Id. (October 2017 report) at 8. He reasoned that Mother's abilities were "highly compromised and not likely to improve over time." Id. Further, he diagnosed Mother with a variety of mental health problems, including an unspecified trauma and stressor related disorder, an unspecified depressive disorder, a learning disorder, and a personality disorder with borderline and dependent features. Id. (March 2018 report) at 6. Dr. Rosenblum concluded that these issues prevent Mother from providing Child "with the quality of care that is needed in order to manage her complex mental health, behavioral, and medical needs." Id. (May and June 2018 report) at 8.

Thus, the record confirms that Mother is incapable of caring for Child and that she cannot or will not remedy her parental incapacity. Her ability to parent Child remains inadequate despite years of services and opportunities to improve. She struggles to interact with Child and becomes frustrated easily. She also struggles to address Child's special needs. While Mother

achieves occasional improvements in her parenting abilities, she has proven unable to maintain those improvements over time. Finally, she suffers from significant mental health issues, which only serve to compound these problems. Thus, we discern no abuse of discretion or error of law with respect to Section 2511(a)(2).

Next, we consider whether the Orphans' Court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted)); see also In re T.S.M., 71 A.3d at 267 (stating that "the

mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition.").

Mother argues that she and Child share a "strong, valuable, and necessary bond." Mother's Brief at 23. Relying on Dr. Rosenblum's psychological evaluation reports, Mother contends that Child needs continuing contact with Mother. Id. at 22. Additionally, Mother asserts that Child's legal interests cannot be ascertained from the record, and that Child's counsel did not indicate whether Child wished to be adopted even if the adoptive family would not support continued contact with Mother.[5] Id. at 23-24.

Here, the Orphans' Court concluded that terminating Mother's parental rights would best serve Child's needs and welfare. Findings of Fact, 7/13/18, at ¶ 67. The court found that Child has a relationship with Mother, but that this relationship should not deny Child the permanence that she deserves through adoption. Id. at ¶¶ 66-67. The court emphasized that Child is thriving in her foster home and that her pre-adoptive foster mother is providing her with excellent care. Id. at ¶¶ 65, 67.

We conclude that the record supports the Orphans' Court's findings regarding Section 2511(b). During the termination hearing, it was undisputed that Child and Mother share a bond. Riley acknowledged the existence of this

_____

[5] Mother did not specifically challenge the representation of Child's legal interests in her Concise Statement or her Statement of Questions Involved. See Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 2116(a). Mother also failed to include any citation to relevant case law regarding this assertion. See Pa.R.A.P. 2119(a). Nevertheless, we decline to deem Mother's issue waived.

bond, but explained that CYF was seeking termination of Mother's parental rights anyway, due to "the longevity of this case, all the services put in and not much progress." N.T., 6/22/18, at 85-87. Riley opined that Child is thriving in her current foster home and that termination would not be detrimental to her. Id. at 85. He did state that Child should have visits with Mother in the future, however, and that never seeing Mother again would not "necessarily be good." Id. at 86.

Similarly, Dr. Rosenblum explained that Child enjoys a strong bond with Mother. CYF Exhibit 3 (May and June 2018 report) at 8. He recommended that the Orphans' Court act to preserve this bond by placing Child in subsidized permanent legal custody or by requiring Child's pre-adoptive foster mother to enter into a post-adoption contact agreement prior to terminating Mother's parental rights. Id. Nonetheless, Dr. Rosenblum also observed that Child is thriving in the care of her pre-adoptive foster mother, who is "exceptionally attentive" to Child's needs. Id. Dr. Rosenblum concluded that the most appropriate long-term goal for Child "will be one which allows her to remain in her current foster home placement on a permanent basis." Id.

While Dr. Rosenblum found that Child shares a bond with Mother, it was within the purview of the Orphans' Court to conclude that this bond is not sufficient to preserve Mother's parental rights. The record supports the finding that Mother is not capable of parenting Child and likely never will be capable. Accordingly, preserving Mother's parental rights would serve only to deny

Child the benefits of a permanent and stable home.  See In re T.D., 949 A.2d 910, 920-23 (Pa. Super. 2008) (affirming termination where "obvious emotional ties exist between [the child] and [p]arents, but [p]arents are either unwilling or unable to satisfy the irreducible minimum requirements of parenthood," and where preserving parental rights would prevent [the child] from being adopted and enjoying permanency); see also In re T.S.M., 71 A.3d at 267.[6]

Further, we reject Mother's claim that the Orphans' Court heard insufficient evidence concerning Child's legal interests.  The Adoption Act requires that children receive counsel in all contested involuntarily termination proceedings.

> (a) Child.--The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents.  The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child.  No attorney or law firm shall represent both the child and the adopting parent or parents.

---

[6] We note that it would not have been permissible for the Orphans' Court to condition termination of Mother's parental rights on the existence of a post-adoption contact agreement.  See In re K.H.B., 107 A.3d 175, 184 (Pa. Super. 2014) (holding that the court erred "when it placed the burden of termination of [m]other and [f]ather's parental rights on [p]aternal [a]unt's willingness to enter into a voluntary agreement for continuing contact following adoption, and when it conflated the analysis of termination of parental rights with adoption.").

23 Pa.C.S.A. § 2313(a). In a plurality decision, our Supreme Court held that under Section 2313(a), courts must appoint counsel to represent the legal interests of a child in a contested involuntary termination proceeding. In re L.B.M., 161 A.3d 172, 179-80 (Pa. 2017); see also id. at 174 (noting that a child's best interests are distinct from his or her legal interests). Three members of the Court held that a child's legal interests cannot be represented by his GAL and requires separate counsel. Id. at 180-82. However, the majority of the Court concluded that counsel may serve both as the GAL, representing the child's best interests, and as child's counsel, representing the child's legal interests, as long as there is no conflict between the child's legal and best interests. Id. at 183-93; see also In re T.S., 192 A.3d 1080, 1088 (Pa. 2018), petition for cert. filed, (U.S. Dec. 11, 2018) (stating that "four Justices in L.B.M. agreed that, where a child's legal and best interests do not diverge in a termination proceeding, an attorney-GAL representing the child's best interests can also fulfill the role of the attorney appointed per Section 2313(a) to represent the child's legal interests.").

Mother does not contend that Child's legal interests conflict with her best interests. Further, we conclude that Attorney Robertson's representation of Child complied with the requirements of L.B.M. and its progeny. Attorney Robertson served as Child's legal counsel during the termination hearing, and he continues to represent her on appeal. Prior to the termination hearing, Attorney Robertson met with Child and attempted to discern her legal

interests. During the hearing, Attorney Robertson argued in support of terminating Mother's parental rights. He explained, "I did speak with [Child]. And despite some communication problem[s] and intellectual disabilities, she was able to state clearly that she wants to stay in the home that she is currently residing in." N.T., 7/12-13/18, at 88; see also Child's Brief at 10 (wherein Attorney Robertson indicated that he conducted an interview with Child, but that counsel was "hampered by communications and comprehension issues."). The record confirms that Child displays cognitive limitations and communication difficulties, which limited Attorney Robertson's ability to discern her legal interests with greater specificity. See CYF Exhibit 3 (May and June 2018 report) at 3-4. Thus, as Attorney Robertson discerned Child's legal interests to the extent they were ascertainable, Mother is not entitled to relief.

Based upon the foregoing, we conclude that the Orphans' Court did not abuse its discretion or commit an error of law by involuntarily terminating Mother's parental rights to Child. We therefore affirm the court's July 13, 2018 Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2019